[Cite as *In re M.B.*, 2019-Ohio-1224.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: M.B.

C.A. No.     29145

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN16-10-000891

DECISION AND JOURNAL ENTRY

Dated: April 3, 2019

CALLAHAN, Presiding Judge.

{¶1}   Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that awarded legal custody to both Father and Mother, and granted Mother visitation pursuant to the juvenile court's standard order of visitation.  This Court reverses and remands.

I.

{¶2}   Mother and Father[1] are the biological parents of M.B. (d.o.b. 10/30/15).  The parents were never married.  Mother is also the biological mother of two other children who are not subjects of this appeal, although one child is otherwise contextually relevant.  At one time, Mother and Father lived together with Mother's oldest child C.P. and the parents' then-infant M.B.

---

[1] Paternity of M.B. was not established until November 2016.

{¶3}  Summit County Children Services Board ("CSB" or "the agency") became involved with the family on an informal basis in February 2016, based on concerns that Mother and Father were involved with drugs.  The parents voluntarily submitted to the agency's safety plan wherein C.P. and M.B. were placed in the home of Father's parents.  Mother and Father engaged in court-ordered substance abuse services as part of their respective criminal drug cases, with varying degrees of success.  During that time, Mother and Father ended their relationship; Mother was arrested on new drug-related charges; C.P. was moved to her maternal grandmother's home; and M.B. remained with his paternal grandparents, while Father maintained a close relationship with the child.  Based on allegations of the parents' drug-related issues, Mother's incarceration, and Father's lack of employment and independent housing, CSB filed a complaint alleging that the then-11-month-old M.B. was a dependent child pursuant to R.C. 2151.04(B) and/or (C).  The child was placed in the emergency temporary custody of his paternal grandparents under protective supervision by the agency.

{¶4}  At the adjudicatory hearing, CSB amended its complaint to delete the reference to Father's lack of independent housing.  Afterwards, Mother and Father waived their rights to a hearing and both stipulated to the remaining allegations in the amended complaint.  The magistrate found M.B. dependent pursuant to R.C. 2151.04(B) and (C), retained the child in the emergency temporary custody of the paternal grandparents under the agency's protective supervision, ordered visitation for Father as the parties might agree, and ordered supervised visitation for Mother as the parties might agree in the paternal grandparents' home.  The juvenile court adopted the magistrate's decision, and no party filed objections.

{¶5}  At the dispositional hearing, Father waived his rights to a hearing and stipulated that M.B. be placed in the temporary custody of his paternal grandparents under protective

supervision by CSB. Because Mother was not present for the hearing, the magistrate heard the testimony of the agency caseworker. Based on that evidence and Father's stipulation, the magistrate placed M.B. in the temporary custody of the paternal grandparents under protective supervision by CSB. Father was to have visitation as the parties might agree, while Mother was permitted to have supervised visitation as the parties might agree in the temporary custodians' home. The parents' child support obligations were set at $0 due to their limited financial resources. The juvenile court adopted the magistrate's decision and made the agency's case plan the order of the court. Under the terms of the case plan, each parent was required to establish and maintain a sober lifestyle, avoid future legal infractions, submit to random drug screens, successfully complete drug treatment programs, comply with the terms of their respective treatment in lieu of conviction programs, regularly visit with the child, and obtain and maintain employment.

{¶6} At the subsequent review hearing, the magistrate found that Mother was not complying with her case plan and treatment plan objectives, while Father was in full compliance. The magistrate maintained the prior temporary custody and visitation orders.

{¶7} Father and Mother each filed a motion for legal custody of M.B. The juvenile court referred the parties to mediation. At the final dispositional hearing, the magistrate asserted he would consider Mother's motion for legal custody, Father's motion for legal custody, and CSB's motions for legal custody to Father and a finding that the agency had used reasonable efforts to finalize a permanency plan for the child.[2] The assistant prosecutor informed the court that Mother and Father had reached an agreement and that CSB was in agreement with the terms. Mother's attorney deferred to Father's attorney to recite the terms of the parents' agreement on

---

[2] Neither of the agency's motions are contained in the record.

the record. The agreement was as follows: Mother and Father agreed to shared parenting, with Father serving as the residential custodian for school purposes. Mother would have a minimum of four hours of supervised visitation one day each week, or as the parties might otherwise agree. Mother's child support obligation would be $0 based on her limited financial resources, but subject to administrative review by the Child Support Enforcement Agency. Father would claim the child for tax purposes.

{¶8} The guardian ad litem asserted that the agreement that had been placed on the record was in the best interest of the child. The magistrate then repeated the parties' agreement in full as it had been presented and found that CSB had made reasonable efforts to finalize a permanency plan for the child. The magistrate terminated CSB's protective supervision and concluded that all outstanding motions had been resolved. Finally, the magistrate asserted that the case would be closed subject to the continuing jurisdiction of the juvenile court.

{¶9} When the magistrate issued his decision, however, although he reiterated all the terms of the parties' agreement, he further ordered the parties to submit a shared parenting agreement to the court for approval. The juvenile court issued a judgment entry adopting the magistrate's decision and mirroring the orders therein the same day. A proposed shared parenting plan was later filed, but it was not signed by any party or attorney. The magistrate therefore scheduled a status conference to discuss the proposed plan. In the interim, Mother and Father each filed different versions of a shared parenting plan for the court's review and approval. In addition, Mother filed a motion to set aside the magistrate's order of December 29, 2017. The record, however, contains no order filed on that date. Nevertheless, at the status

hearing, the magistrate noted Mother's pending "objection" and scheduled a "trial" to resolve the substantive issue of custody that the magistrate asserted had not been resolved.[3]

{¶10} In a judgment entry addressing Mother's purported motion to set aside the magistrate's December 29, 2017 order, the juvenile court denied the motion. The juvenile court found that, despite the agreement placed on the record at the hearing on September 21, 2017, it was clear that the parties were not in agreement as to "the child's custodial status." Accordingly, the juvenile court rejected all shared parenting plans proposed by the parties and scheduled the matter "for legal custody trial" before the magistrate.

{¶11} At the hearing, the magistrate informed the parties that "the matter before the Court today is a motion for legal custody of the child following dispositional order." Father presented his case-in-chief first, presenting the testimony of Mother as on cross-examination, the former CSB caseworker, and the paternal grandmother. Inexplicably, Father did not testify in support of his own motion for legal custody. In Mother's case-in-chief, she presented only her own testimony. Finally, the guardian ad litem testified, recommending that the court grant legal custody to both Mother and Father, and designate Father as the residential parent for school purposes. In his report, the guardian further recommended that Mother enjoy companionship with M.B. pursuant to the juvenile court's standard order of visitation.

---

[3] CSB filed a motion for clarification, asserting that it was unclear to which order Mother's motion to set aside related, given the absence of a December 29, 2017 magistrate's order. The agency argued that, if Mother was challenging the September 29, 2017 magistrate's decision which recited the terms of the parties' shared parenting agreement, her objections were untimely. In addition, CSB requested that it be excused from further participation in the proceedings, as its protective supervision had been terminated pursuant to the juvenile court's September 29, 2017 judgment entry adopting the magistrate's decision of the same date, and the agency had had no further contact with the family since that time. The magistrate later excused the agency from further participation in the case.

{¶12} During closing arguments, Father and the guardian ad litem emphasized that the only motions before the court were Father's and Mother's individual motions for legal custody, and that there was no motion for a shared parenting plan pending. Nevertheless, the magistrate asserted that the only issue he would resolve was the contested issue of custody, and that the parties must thereafter submit a shared parenting agreement which the court would then incorporate into its judgment. Despite Father's assertion that the parties had no agreement, thereby necessitating the legal custody hearing, the magistrate insisted that the parties did in fact agree to shared parenting and only disagreed on the issue of custody.

{¶13} The magistrate issued a decision, placing M.B. in the "joint custody" of Mother and Father, designating Father as the "residential parent[,]" and ordering the parties "to submit the agreed shared parenting agreement" for the court's review. Although there was no order regarding visitation, the magistrate advised the parties to address "Mother's supervised visitation schedule" in the agreement. The juvenile court adopted the magistrate's decision the same day. Both the decision and judgment included the following language in the orders: "Following submission [of the agreed shared parenting agreement] the Court will advise the parties if additional hearings are necessary." No party filed objections.

{¶14} Instead of filing one executed shared parenting agreement, Mother and Father each filed a proposed shared parenting plan. Because of the disparities and lack of a fully executed shared parenting plan, the magistrate ordered the legal representatives of Mother and Father to appear for mediation and remain at the courthouse until an agreement was reached. The magistrate dictated the precise language that the agreement must incorporate regarding placement of the child in the "joint custody" of Mother and Father. Father filed a motion to set aside the magistrate's order and appended the affidavit of his attorney who averred that the

parties had been unable to work out a shared parenting agreement. Father also filed a motion to compel the adoption of his proposed shared parenting plan, which would place the child in the joint custody of Mother and Father, designate Father as the residential parent, give Mother supervised visitation, and set Mother's child support obligation at $0.

{¶15} The juvenile court scheduled a hearing before the judge on Father's motion to set aside. There is no transcript in the record of a hearing on Father's motion. In fact, Mother and Father agree that the juvenile court judge met off the record in chambers with counsel to address the matter. Afterward, the juvenile court issued a judgment entry arising out of that "motion hearing" in which the court noted that the magistrate had already placed M.B. in the "Joint Legal Custody of the parents." The juvenile court wrote that the only issue on which Mother and Father had not been able to agree was "the division of time that the child spends with each parent." The juvenile court found that Father's insistence on supervised visitation for Mother was "in direct conflict with the Magistrate's [May 4, 2018] Decision granting Joint Custody to which Father did not object." Accordingly, the juvenile court ordered that M.B. shall remain in the legal custody of Mother and Father, with Father designated as the residential parent. The juvenile court further ordered that "Mother shall have parenting time as set forth in the attached Standard Order of Visitation." The judgment entry did not reference the child's residence for school purposes or issue a child support order. Father timely appealed, raising two assignments of error for review. As Father consolidated his assignments of error for discussion, this Court also does so.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION BY ARBITRARILY
MODIFYING THE PARTIES' PRIOR AGREED UPON SUPERVISED

VISITATION ORDER AS WELL AS THE SUBSEQUENT SUPERVISED VISITATION ORDER PREVIOUSLY ISSUED BY THE MAGISTRATE.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S JULY 20, 2018 ORDER MODIFYING THE PARTIES' PRIOR AGREED UPON SUPERVISED VISITATION ORDER AND SUBSEQUENT SUPERVISED VISITATION ORDERS PREVIOUSLY ISSUED BY THE MAGISTRATE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR CONTRARY TO LAW.

{¶16} Father argues that the juvenile court erred by awarding Mother unsupervised visitation. This Court agrees.

{¶17} As an initial matter, this Court is puzzled by the case management by the magistrate in the matter below. Substantively, the case was a dependency action. The magistrate repeatedly conflated the concepts of legal custody where a child has been adjudicated dependent versus shared parenting as R.C. 3109.04 addresses that custodial mechanism. R.C. 2151.415 requires the children services agency to file a dispositional motion in a dependency action. Although the magistrate indicated that CSB had filed a motion for legal custody to Father, it released the agency from further involvement in the case before the matter of the child's custody was fully resolved. The magistrate then conducted proceedings more akin to those relevant to a divorce action.

{¶18} Of greater concern are the magistrate's continued attempts to impose a shared parenting agreement upon Mother and Father who repeatedly asserted and otherwise demonstrated that they were not in agreement regarding the child's custody. A plain reading of R.C. 3109.04 indicates that a trial court has no authority to impose a shared parenting agreement between parties who maintain separate motions for legal custody of their child, and in fact oppose the imposition of a shared parenting plan. Despite insisting that the parents had an agreement, the magistrate required Mother and Father to prosecute their individual motions for

legal custody, believing that a discrete determination of legal custody is required where the parents have entered into a shared parenting agreement. R.C. 3109.04 enunciates a default designation of both parents as residential parents and legal custodians of a child subject to a shared parenting plan. R.C. 3109.04(L)(5)/(6). Accordingly, it is unclear why the magistrate believed that a contested legal custody hearing was necessary when he believed that Mother and Father had an agreement for shared parenting. On the other hand, it is unclear why the magistrate conducted a hearing on the parents' individual motions for legal custody, yet failed to issue a distinct ruling on either motion. Nevertheless, this Court is constrained to review the assignments of error within the context of the procedural posture as evidenced by the record.

{¶19} As to the substantive issues of Father's appeal, this Court concludes that the juvenile court's award of unsupervised visitation for Mother is against the manifest weight of the evidence. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶20} The juvenile court awarded unsupervised visitation to Mother based, in significant part, on its finding that "Father is insistent that all of Mother's contact with the child be supervised but that is in direct conflict with the Magistrate's Decision granting Joint Custody to which Father did not object." When the magistrate ordered "joint custody," he did not issue any visitation order. Instead, the magistrate directed the parties to submit a shared parenting

agreement in which the parents were to address "Mother's *supervised* visitation schedule." (Emphasis added.) Father would have had no reason to object to the magistrate's decision that limited Mother's visitation as he had requested. Because the magistrate was adamant throughout the proceedings that Mother and Father had reached an agreement, he could only have been relying on the agreement placed on the record at what was intended to be the final dispositional hearing. At that hearing, the parties agreed that Mother would have supervised visitation. Accordingly, the juvenile court's award of unsupervised visitation for Mother pursuant to the standard order of visitation is against the manifest weight of the evidence. Father's assignments of error are sustained.

III.

{¶21} Father's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JAMES K. REED, Attorney at Law, for Appellant.

KENNETH C. MARTIN, Attorney at Law, for Appellee.

NEIL AGARWAL, Guardian ad Litem.